## 24-1416

# United States Court of Appeals
### for the
## Fourth Circuit

JENNIFER FINN; KATHERINE MULDOON,

*Plaintiffs/Appellants*,

— v. —

HUMANE SOCIETY OF THE UNITED STATES,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## BRIEF OF APPELLEE

Karla Grossenbacher
Leslie V. Maffeo
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
(202) 463-2400

*Counsel for Appellee*

CP  COUNSEL PRESS     (800) 4-APPEAL • (JOB 331804)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __24-1416__          Caption: __Finn, et al. v. The Humane Society of the United States__

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Humane Sociaety of the United States__
(name of party/amicus)

_____

 who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO


2.      Does party/amicus have any parent corporations?                           ☐YES ☑NO
        If yes, identify all parent corporations, including all generations of parent corporations:




3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
        other publicly held entity?                                              ☐YES ☑NO
        If yes, identify all such owners:

4.      Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?          ☐YES ☑NO
If yes, identify entity and nature of interest:

5.      Is party a trade association? (amici curiae do not complete this question)      ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.      Does this case arise out of a bankruptcy proceeding?          ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.      Is this a criminal case in which there was an organizational victim?      ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Leslie V. Maffeo _____        Date: _____5/15/2024_____

Counsel for: Appellee _____

- 2 -

Print to PDF for Filing

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... ii

JURISDICTIONAL STATEMENT ........................................................1

STATEMENT OF ISSUES ...................................................................1

STATEMENT OF THE CASE................................................................2

    Finn's Title VII Claim ....................................................................2

    Muldoon's Title VII Claim .............................................................3

    Appellants' ADA Claims.................................................................4

    The District Court's Dismissal of Finn and Muldoon's Claims.....................4

SUMMARY OF ARGUMENT .............................................................8

STANDARD OF REVIEW ...................................................................9

ARGUMENT ......................................................................................11

    I.    THE DISMISSAL OF APPELLANTS' TITLE VII CLAIMS
            SHOULD BE AFFIRMED .................................................11

            A.    Finn's Religious Discrimination Claim ...................12

            B.    Muldoon's Religious Discrimination Claim............................16

            C.    The Eighth Circuit's Reversal of the District Court's
                   Decision in *Ringhofer* Does Not Require Reversal of
                   the District Court's Dismissal of Appellants' Title VII
                   Claims ...............................................................20

    II.    THE DISMISSAL OF APPELLANTS' ADA CLAIMS
            MUST BE AFFIRMED .......................................................24

            A.    Disability-Related Inquiry ......................................24

            B.    Regarded As Disability Discrimination ....................27

CONCLUSION....................................................................................32

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Aliano v. Township of Maplewood*,
No. 22-CV-5598 (ES) (AME), 2023 WL 4398493
(D.N.J. July 7, 2023) ...................................................................17, 18

*Apuzza v. NYU Langone Long Island*,
No. 222-CV-7519 NJC/JMW, 2023 WL 9022790
(E.D.N.Y. Dec. 29, 2023) ....................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................10

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................10, 11

*Briscoe v. LaHue*,
663 F.2d 713 (7th Cir. 1981) ..............................................................10

*Chalmers v. Tulon Co. of Richmond*,
101 F.3d 1012 (4th Cir. 1996) .......................................................12, 20

*Coker v. Enhanced Senior Living, Inc.*,
897 F. Supp. 2d 1366 (N.D. Ga. 2012) ...............................................31

*Covel v. Cmty. Physicians of N. Port, P.A.*, No.,
23-10853, 2024 WL 1923256 (11th Cir. May 1, 2024) ......................29

*Dachman v. Shalala*,
9 F. App'x 186 (4th Cir. 2001).............................................................13

*Davis v. City of Charlottesville Sch. Bd.*,
498 F. App'x 231 (4th Cir. 2012)...........................................................9

*E.E.O.C. v. Firestone Fibers & Textiles Co.*,
515 F.3d 307 (4th Cir. 2008) ..............................................................12

*EEOC v. STME, LLC*,
938 F.3d 1305 (11th Cir. 2019) .....................................................29, 31

*Ellison v. Inova Health Care Servs*.,
   No. 23-00132 (MSN/LRV), 2023 WL 6038016
   (E.D. Va. Sept. 14, 2023) ...........................................................6, 14, 15

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
   200 F. Supp. 3d 553 (E.D. Pa. 2016)...................................................14

*Finkbeiner v. Geisinger Clinic*,
   Civ. No. 4:21-CV-01903, 2022 WL 3702004
   (M.D. Pa. Aug. 26, 2022) ...............................................................14, 19

*Forsyth v. Univ. of Alabama, Bd. of Trustees*,
   2021 WL 4075728 (11th Cir. 2021)......................................................31

*Foshee v. AstraZeneca Pharms. LP*,
   No. CV SAG-23-00894, 2023 WL 6845425 (D. Md. Oct. 17, 2023) .........*passim*

*Friend v. AstraZeneca*,
   No. SAG-22-03308, 2023 WL 3390820 (D. Md. May 11, 2023).......................26

*Gallo v. Washington Nationals Baseball Club, LLC*,
   No. 22-CV-01092 (APM), 2023 WL 2455678 (D.D.C. Mar. 10, 2023) .............28

*Gentry v. E. W. Partners Club Mgmt. Co. Inc.*,
   816 F.3d 228 (4th Cir. 2016) ................................................................27

*Halczenko v. Ascension Health, Inc.*,
   No. 1:21-CV-02816-JPH-MG, 2023 WL 3558907
   (S.D. Ind. May 19, 2023)........................................................................28

*Hice v. Mazzella Lifting Techs., Inc.*,
   589 F. Supp. 3d 539 (E.D. Va. 2022)....................................................29

*Jorgenson v. Conduent Transp. Solutions, Inc.*,
   No. SAG-22-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023)........25, 26, 28, 31

*Kiel v. Mayo Clinic Health Sys. Se. Minn.*,
   Civ. Nos. 22-1319, 22-1327, 22-1405, 22-1420, 22-1427, 2023 WL
   5000255 (D. Minn. Aug. 4, 2023).............................................................7

*Leggo v. M.C. Dean, Inc.*,
   Civil No. 1:22-CV-374 (LMB/IDD), 2023 WL 1822383
   (E.D. Va. Feb. 7, 2023) .................................................................... 28-29

*Miller v. Maryland Dep't of Nat. Res.*,
    813 F. App'x 869 (4th Cir. 2020).........................................................27

*Papasan v. Allain*,
    478 U.S. 265 (1986) ...........................................................................10

*Philips v. Pitt Cnty. Mem'l Hosp.*,
    572 F.3d 176 (4th Cir. 2009).................................................................9

*Presley v. City of Charlottesville*,
    464 F.3d 480 (4th Cir. 2006)...............................................................10

*Reed v. Great Lakes Cos.*,
    330 F.3d 931 (7th Cir. 2003)...............................................................20

*Ringhofer v. Mayo Clinic*,
    102 F.4th 894 (8th Cir. 2024)........................................................*passim*

*Schneider v. County of Fairfax*,
    Civil No. 1:22-CV-871 (LMB/WEF), 2023 WL 2333305
    (E.D. Va. March 2, 2023)....................................................................28

*Sharikov v. Philips Medical Systems MR, Inc.*,
    103 F.4th 159 (2d Cir. June 4, 2024)...................................................30

*Shigley v. Tydings & Rosenberg LLP*,
    No. JKB-23-02717, 2024 WL 1156613 (D. Md. Mar. 18, 2024).............5, 13, 31

*Shklyar v. Carboline Co.*,
    Civil No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21,
    2022), *aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023)...............29

*Speaks v. Health Systems Management, Inc.*,
    Civil No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649
    (W.D.N.C. Aug. 17, 2022) ...................................................28, 29, 32

*Welsh v. United States*,
    398 U.S. 333 (1970) ......................................................................5, 13

*Wilkerson v. New Media Tech. Charter Sch. Inc.*,
    522 F.3d 315 (3rd Cir. 2008).................................................................20

*Winans v. Cox Auto., Inc.*,
    669 F. Supp. 3d 394 (E.D. Pa. 2023)................................................7, 18

*Winans v. Cox Automotive, Inc.*,
  No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023).............. 16-17, 19

*Young v. City of Mount Ranier*,
  238 F.3d 576 (4th Cir. 2001) ................................................................10

**Statutes and Other Authorities:**

28 U.S.C. § 1291 ......................................................................................1

28 U.S.C. § 1331 ......................................................................................1

42 U.S.C. § 2000e-2 .................................................................................1

42 U.S.C. § 12101 ....................................................................................1

42 U.S.C. § 12101(3)(A) .........................................................................31

42 U.S.C. § 12102(1) ..............................................................................27

42 U.S.C. § 12102(3) .......................................................................... 27-28

Fed. R. Civ. P. 12(b)(6)....................................................................*passim*

*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act,
  and Other EEO Laws*, at section K.9, available at https://www.eeoc.gov/
  wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-
  and-other-eeo-laws#K.9 (last visited July 28, 2024)...........................25

## JURISDICTIONAL STATEMENT

Under 28 U.S.C. § 1291 the Court of Appeals has jurisdiction over all final decisions of the federal district courts.  Judge George L. Russell, III, of the United States District Court for the District of Maryland, granted the Humane Society of the United States' motion to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, rendering judgment against both of the Appellants, Jennifer Finn and Katherine Muldoon, on April 24, 2024.  JA24.  The judgment adjudicated all claims as to all parties.

The District Court's jurisdiction was established under 28 U.S.C. § 1331 as a civil proceeding arising under the laws of the United States, specifically Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Americans with Disabilities Act, (ADA), 42 U.S.C. § 12101 *et seq*.

## STATEMENT OF ISSUES

A.    Whether or not Jennifer Finn adequately stated a Title VII claim for religious discrimination in the Complaint.

B.    Whether or not Katherine Muldoon adequately stated a Title VII claim for religious discrimination in the Complaint.

C.    Whether or not inquiries about COVID-19 vaccination status constitute a disability-related inquiry within the meaning of the ADA.

A.    Whether or not Finn and Muldoon adequately alleged a disability discrimination claim based on being regarded as having a disability within the meaning of the ADA.

## STATEMENT OF THE CASE

Appellants Jennifer Finn ("Finn") and Katherine Muldoon ("Muldoon") (collectively, "Appellants") brought this lawsuit against the Humane Society of the United States (the "HSUS") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Americans with Disabilities Act of 1990 ("ADA"). Each of Appellants' claims arise out of the HSUS's implementation of a mandatory COVID-19 vaccine requirement on November 10, 2021. JA09. In its policy, the HSUS provided employees with information regarding applying for a medical exemption or religious accommodation. JA09. Finn and Muldoon both made requests for religious accommodation to this policy, which the HSUS denied. JA09-14. The HSUS subsequently terminated Appellants' employment for refusing to comply with the policy after each of their accommodations were denied.

Finn's Title VII Claim

Finn alleges the following facts in the Complaint: Finn submitted a request for a religious accommodation in which she "cited Catholic teachings aligning with her faith that would be betrayed by getting vaccinated against COVID-19." JA09. She wrote on her request for accommodation that her "conscience and heart are

guided by [her] faith in God the Father and his son Jesus Christ" and that "[t]he HSUS policy would unjustly force [her] to act in betrayal to [her] conscience and faith." JA09-10. After two follow-up interviews to further discuss her request for accommodation, HSUS ultimately denied the request on December 2, 2021. JA10. On January 3, 2022, because Finn remained unvaccinated, the HSUS terminated her employment. JA10-11. Based on these facts, Finn asserts that the HSUS failed to provide her with a reasonable accommodation for a sincerely held religious belief. JA15-19.

Muldoon's Title VII Claim

Muldoon alleges the following facts in the Complaint: She submitted a request for a religious accommodation in which she "cited the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals as going against her spiritual and religious beliefs." JA12. In her request, she wrote: "[a]ccepting this vaccine would compromise the religious beliefs founded in my Christian upbringing that fetuses are individuals and did not consent to the use of their bodies in medical testing or production. As such, taking this vaccine would make me complicit in an act that offends my spiritual and religious faith." *Id*. She participated in a follow-up interview to further discuss her request for accommodation, but HSUS ultimately denied the request on February 1, 2022. JA13. On February 7, 2022, because she remained unvaccinated, the HSUS

3

terminated her employment. *Id.* Muldoon asserts, based on these facts, that the HSUS failed to provide her with a reasonable accommodation for a sincerely held religious belief. JA15-19.

Appellants' ADA Claims

Both Finn and Muldoon allege the following facts in the Complaint in support of their ADA claims. By "demand[ing] that employees disclose their medical and COVID-19 vaccination status," the HSUS violated the ADA by conducting an unlawful medical examination or inquiry. JA19. Appellants further allege that such examination or inquiry was not job related or consistent with business necessity. JA20. Finally, Appellants allege that the HSUS regarded them as disabled and terminated their employment on this basis. JA25-26. Appellants' only factual support for this contention is that their medical status as "unvaccinated" was "neither transitory nor minor" and that "[a]t one time, limitations had been placed on unvaccinated individuals that limited one or more of life's major activities." JA25-26.

The District Court's Dismissal of Finn and Muldoon's Claims

On November 15, 2023, the HSUS filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Appellants failed to allege sufficient facts in their Complaint to state a claim upon which relief could be granted. Dkt #14. In an Order dated April 4, 2024, the U.S. District Court

for the District of Maryland granted the HSUS's motion and dismissed the Complaint in its entirety.  JA42-58.

Specifically, with respect to the Title VII failure to accommodate claims, the District Court found that, while both Finn and Muldoon "adequately alleged that their beliefs are sincerely held," neither Finn nor Muldoon "adequately pled that their beliefs are 'religious' in nature," and thus neither could make out a *prima facie* claim of religious discrimination.  JA50.  The District Court stated that "[t]o determine whether beliefs are 'religious' in nature, the Court must discern 'whether the beliefs are based on a system that is recognizably a religious 'scheme of things,' rather than secular morality or personal health, convenience, preference, or whim.'" JA50-51 (quoting *Shigley v. Tydings & Rosenberg LLP*, No. JKB-23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024); *Welsh v. United States*, 398 U.S. 333, 339 (1970)). The District Court further stated that "beliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs."  JA51 (quoting *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023).

In holding that Finn did not adequately allege that her objections to the COVID-19 vaccine were religious in nature, the District Court noted that Finn did not "identify if she subscribes to any particular religion or the specific nature of any

religious beliefs" and while she "states that Catholic teachings 'align with her faith,' she does not state that she identifies as Catholic nor does she provide any specifics regarding what beliefs make up her 'faith.'" JA50. The District Court found that Finn's "entire religious exemption request is essentially a statement that her religion requires that she listen to her conscience and act according to personal preference." JA52.

With respect to Muldoon's Title VII claim, the District Court found that "Muldoon does not allege that she subscribes to a particular religion nor does she state what her religious beliefs are." JA52. The District Court also stated that "Muldoon references her Christian upbringing," but she "does not allege what religious beliefs she holds now." JA52. The District Court further stated that "Muldoon states that she holds a 'sincere spiritual belief that every person has autonomy over their body,'" and reiterated that "beliefs based on personal preference cannot establish a sincere religious objection under Title VII because they would amount to a 'blanket privilege' with no principled limitation in scope." JA52-53 (citing *Ellison v. Inova Health Care Servs.*, No. 23-00132 (MSN/LRV), 2023 WL 6038016, at *5 (E.D. Va. Sept. 14, 2023)).

Although acknowledging Muldoon's allegation in the Complaint that "the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals . . . go[es] against her spiritual and religious beliefs," the District Court

found it to be inadequate to establish that Muldoon's objection to receiving the COVID-19 vaccine was religious in nature because she did not explain how the use of fetal cell lines in the creation of the vaccine was "tied to any religious belief. JA53 (citing *Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394, 401 (E.D. Pa. 2023) (holding that plaintiff's objection to the use of fetal cell lines in the development of the COVID-19 vaccine does not amount to a religious belief)).[1]  As such, the District Court found that Muldoon had "failed to allege how her objections to the COVID-19 vaccination are religious in nature and cannot make out a *prima facie* case of religious discrimination."  JA53.

Based on the foregoing, the District Court dismissed Finn and Muldoon's Title VII claims.[2]  JA52-53.

---

[1] Contrary to Appellants' assertion,  the District Court's reliance on *Kiel v. Mayo Clinic Health Sys. Se. Minn.*, Civ. Nos. 22-1319, 22-1327, 22-1405, 22-1420, 22-1427, 2023 WL 5000255, at *7–9 (D. Minn. Aug. 4, 2023), which was recently overturned by the Eighth Circuit, does not require reversal.  The District Court relied on *Kiel* for the proposition that a religious opposition to abortion is distinct from an opposition to "vaccines that were potentially developed using a fetal cell line," the Court's conclusion that Muldoon's objection to the COVID vaccine was not religious in nature was not based entirely on the *Kiel* decision.  JA52-53.

[2] Although the District Court also held that neither Finn nor Muldoon had adequately pled a disparate treatment discrimination claim under Title VII as neither had demonstrated that they were treated differently than similarly situated employees of a different (or no) religion, Finn and Muldoon did not assert a disparate treatment religious discrimination in the Complaint. JA15-19, 54. Appellants have not appealed this aspect of the District Court's decision, and this issue is not before this Court.

The District Court also dismissed Appellants' ADA claims. With respect to the unlawful medical inquiry or examination claim, the District Court held that "[i]t is well settled that an inquiry about vaccination status does not constitute a medical examination or an inquiry about a disability or disabling condition." JA55-56 (citing multiple cases). The District Court also noted that the EEOC had confirmed this fact. JA56.

With respect to Appellants' "regarded as" disabled claim, the District Court stated that it has been "repeatedly held that a person's status as unvaccinated does not support a 'regarded as' claim under the ADA." JA57 (citing multiple District of Maryland cases). Moreover, the District Court found that "Finn and Muldoon fail[ed] to allege any facts that indicate the Humane Society regarded them as having a physical or mental impairment," but rather, that they were "societally impaired" because their unvaccinated status "limited their ability to engage in certain social activities, but such social limitations do not support a regarded as claim." JA57-58.

## **SUMMARY OF ARGUMENT**

The District Court's dismissal of Finn's and Muldoon's Title VII failure to accommodate claims should be affirmed. Finn has failed to sufficiently allege a *religious* basis for objection to the COVID-19 vaccine that was communicated to the HSUS. Instead, Finn has, in sum and substance, alleged that she has a personal belief

system in which she follows her conscience and her conscience dictated that she not get the vaccine.

Similarly, Muldoon has not sufficiently alleged a *religious* objection to the vaccine that she communicated to the HSUS, but instead has alleged that her "Christian upbringing" taught her that abortion was wrong. However, Muldoon does not allege anything in the Complaint about her current religious beliefs nor does she tie the use of fetal cell lines in the development of the vaccine to any religious belief she holds.

The dismissal of Appellants' ADA claims should be affirmed because their ADA claims are entirely baseless. Specifically, asking employees for their vaccination status is not an impermissible disability-related inquiry under the ADA and an employer's implementation of a mandatory COVID-19 vaccination policy does not support an inference that the employer regarded unvaccinated employees as disabled, and no federal court has held otherwise.

## STANDARD OF REVIEW

Review of a district court's grant of a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure is *de novo*. *Davis v. City of Charlottesville Sch. Bd.*, 498 F. App'x 231, 232 (4th Cir. 2012) (citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 179–80 (4th Cir. 2009)).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The facts alleged must raise a right to relief above the speculative level; it is not enough to create a mere suspicion of a legally cognizable right of action. *Id*. at 555. The complaint must meet the standard of plausibility. *Id*. at 557. When a complaint fails to "possess enough heft" to show that the pleader is entitled to relief, "this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* at 557-58 (citations omitted). *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (noting that the purpose of a Rule 12(b)(6) motion is to test the legal sufficiency of a plaintiff's complaint). As the Supreme Court explained, the standard calls for "more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted).

Further, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (citing *Briscoe v. LaHue*, 663 F.2d 713, 723 (7th Cir. 1981)); *Young v. City of Mount Ranier*, 238 F.3d 576, 577 (4th Cir. 2001) (stating that the mere "presence ... of a few conclusory

10

legal terms does not insulate a complaint from dismissal under Rule 12(b)(6)"). Finally, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly*, at 1949-50. The pleading rules do not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* (noting the pleading standard under Rule 8 demands "more than an unadorned, the-defendant-unlawfully-harmed-me accusation…. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement.") (quotations omitted).

## ARGUMENT

### I. THE DISMISSAL OF APPELLANTS' TITLE VII CLAIMS SHOULD BE AFFIRMED.

The District Court properly dismissed both Finn's and Muldoon's religious discrimination claims, holding that "neither Finn nor Muldoon have adequately pled that their beliefs are "religious" in nature, and thus neither can make out a *prima facie* claim of religious discrimination." JA50.[3]

_____

[3] The HSUS did not argue in its motion to dismiss that Appellants' Title VII claims should be dismissed because they did not allege that the beliefs that formed the basis for their requests for accommodation were sincere. While the HSUS believes it would have had grounds to challenge the sincerity of Appellants' beliefs during the course of the litigation had its motion to dismiss not been granted, HSUS argued in its motion to dismiss only that Finn and Muldoon's Title VII claims failed because they had not adequately alleged that their objections to the COVID-19 vaccine were *religious* in nature or that they had adequately informed HSUS of their religious objections to the COVID-19 vaccines during the accommodation process. Appellants' arguments in their opening brief that their beliefs are sincerely held are

An employee can establish a *prima facie* claim of failure to accommodate under Title VII by showing that "(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *E.E.O.C. v. Firestone Fibers & Textiles Co.*, 515 F.3d 307, 312 (4th Cir. 2008) (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1019 (4th Cir. 1996) (additional citations omitted)).

A.    Finn's Religious Discrimination Claim

Finn did not adequately allege in the Complaint the specific nature of any religious belief she holds that conflicted with the HSUS's vaccination requirement. JA09-10, JA15-19. Finn merely alleges that she "cited Catholic teachings aligning with her faith that would be betrayed by getting vaccinated against COVID-19" in her request for accommodation to the HSUS without alleging in her Complaint that she actually ascribes to the "Catholic teachings" cited in her request. JA09-10. Rather, Finn alleges that such teachings "align[]" with her personal beliefs, which she does not describe other than to say that her "conscience and heart are guided by

---

irrelevant and serve only as a distraction from the real issues in this case. *See, e.g,.* App. Br. 18, 22 and 32. Appellants employed the same strategy before the District Court, which led to the District Court noting in its decision that "[b]oth Finn and Muldoon have adequately alleged that their beliefs are sincerely held, as there is no reason to assume from the face of their Complaint that their 'beliefs have been concocted for litigation or are otherwise disingenuous.'" JA50.

[her] faith in God the Father and his son Jesus Christ" and that the "HSUS policy would unjustly force [her] to act in betrayal to [her] conscience and faith." *Id.*, JA37. In other words, Finn informed HSUS that her personal belief system requires her to act in accordance with her own personal preference and that is why she chose not to receive the COVID-19 vaccines. Thus, Finn's objection to the COVID-19 vaccines was nothing more than a personal preference couched in religious terms.

As the District Court noted, "[t]o determine whether beliefs are 'religious' in nature, the Court must discern 'whether the beliefs are based on a system that is recognizably a religious 'scheme of things,' rather than secular morality or personal health, convenience, preference, or whim.'" JA50-51 (quoting *Shigley v. Tydings & Rosenberg LLP*, No. JKB-23-02717, 2024 WL 1156613, at *3 (D. Md. Mar. 18, 2024) (quoting *Welsh v. United States*, 398 U.S. 333, 339 (1970)). Aptly quoting another District of Maryland case, and perfectly summing up Finn's request, the District Court further explained that "[b]eliefs amounting to a declaration that an employee has the right to make unilateral decisions do not constitute religious beliefs, even where religion is expressly invoked in communicating the beliefs." JA51 (quoting *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at *4 (D. Md. Oct. 17, 2023); citing *Dachman v. Shalala*, 9 F. App'x 186, 192 (4th Cir. 2001) ("While an employer has a duty to accommodate an

employee's religious beliefs, [it] does not have a duty to accommodate an employee's preferences.")).

Other federal courts have also dismissed religious discrimination claims on similar facts. For example, in *Ellison v. Inova Health Care Services*, a district court in this Circuit dismissed a religious discrimination claim where one of the plaintiffs claimed that he believed that "it is a God-given responsibility and requirement for [him] to protect the physical integrity of his Body," explaining that he did so by "pray[ing] over every decision [he] make[s] concerning his body or [his] health." No. 1:23-cv-00132 (MSN/LRV), 2023 WL 6038016, *5 (E.D. Va. Sept. 14, 2023). That court held that plaintiff's allegations "fail[ed] to establish a sincere religious objection" under Title VII because it would "amount[] to the type of 'blanket privilege' that undermines our system of ordered liberty." *Id.* at *5; *see also Finkbeiner v. Geisinger Clinic*, Civ. No. 4:21-CV-01903, 2022 WL 3702004, at *4 (M.D. Pa. Aug. 26, 2022) (granting motion to dismiss a religious accommodation claim based on Plaintiff's assertion of a "God given right to make her own choices" since such a position, if deemed a *bona fide* religious belief "would amount to a blanket privilege and a limitless excuse for avoiding all unwanted obligations"); *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 200 F. Supp. 3d 553, 560-61 (E.D. Pa. 2016) (rejecting assertions that an objection to vaccination based on safety and

14

efficacy concerns, along with a contention that consenting to vaccination would violate his conscience about right and wrong, amounted to religious beliefs).

The District Court, here, agreed, holding that "this 'conscience-based justification could be used to evade any job requirement that [Plaintiff] disagreed with.'" JA52 (quoting *Foshee*, 2023 WL 6845425, at *4) (alteration in original).  The District Court further held that "Finn's beliefs confer exactly the unverifiable ''blanket privilege' that courts cannot permit to be couched as religious in nature.'" JA52 (citing *Foshee*, 2023 WL 6845425, at *5 (quoting *Ellison*, 2023 WL 6038016, at *5)).  Appellants criticize the District Court's reliance on *Foshee* by calling out an example the *Foshee* court provided of the "blanket privilege" issue:

> For example, a hypothetical plaintiff could assert, despite his shift starting at 8, that his God-given conscience or the Holy Spirit told him to rest and not start work until 10:30.  Mandating that such assertions be accommodated as religious in nature would entirely frustrate an employer's ability to maintain an orderly workplace.

*Foshee*, 2023 WL 6845425, at *5 n.3; Appellants' Brief ("App. Br.") 26.  Appellants state that this example "and the legal reasoning on which it is based runs directly contrary to the rule that requires an employer to provide reasonable accommodation for people observing the sabbath." App. Br. 26.  However, the court was not referring to an employee observing the sabbath, but rather an employee who simply decided to "trust his conscience" in order get some rest and come in late.

For the foregoing reasons and those stated in the District Court's opinion below, the dismissal of Finn's Title VII claim should be affirmed.

B.    <u>Muldoon's Religious Discrimination Claim</u>

Muldoon also failed to allege adequately in the Complaint that she has or had a religious belief that conflicted with the HSUS's vaccination requirement or that she put the HSUS on notice of such a belief. Like Finn, Muldoon makes no allegations about what religious beliefs she currently holds. Specifically, Muldoon alleges that she "cited the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals" in her request "as going against her spiritual and religious beliefs." JA12, JA40; *see also* JA53. However, she does not explain in any way what her religious beliefs actually are. To the contrary, Muldoon merely alleges that she stated in her request that "[a]ccepting this vaccine would compromise the religious beliefs *founded in [her] Christian upbringing* that fetuses are individuals and did not consent to the use of their bodies in medical testing or production." JA40 (emphasis added). Although she references her "Christian upbringing," Muldoon does not assert that she actually holds such beliefs now.

In addition, Muldoon's mere invocation of the fact that fetal cell lines from aborted fetuses were used to create the COVID-19 vaccines is insufficient to establish she had a religious objection to the COVID-19 vaccines within the meaning of Title VII. *See Winans v. Cox Automotive, Inc.*, No. CV 22-3826, 2023 WL

2975872, at *1 (E.D. Pa. Apr. 17, 2023) (dismissing Title VII claim because the complaint failed to allege that the plaintiff's concerns regarding fetal cell lines arose "out of any comprehensive religion—formal or informal—that [drove] the way he thinks about 'deep and imponderable matters'" and failed to "identify *why* Plaintiff object[ed] to the use of fetal cell lines in the development of the COVID-19 vaccine."). Although courts have found in some cases that objections to the COVID-19 vaccines based on the use of cell lines from aborted fetuses in developing the COVID-19 vaccines constitute a religious objection where those objections are clearly tied to a religious belief held by the employee, that does not mean that Muldoon has adequately alleged in this case that she has such a religious objection. The mere mention of an objection to aborted fetal cell usage in the creation of the COVID-19 vaccines is not enough to establish a religious objection as individuals can have non-religious moral or political objections to the usage of cell lines derived from aborted fetuses.

Each religious accommodation must be assessed individually. For example, in *Aliano v. Township of Maplewood*, the district court for the district of New Jersey found that it was "close" as to whether the objection was religious in nature, but ultimately held that a plaintiff had "adequately connected his anti-abortion beliefs to his religion and objection to Maplewood's COVID-19 vaccine mandate." No. 22-CV-5598 (ES) (AME), 2023 WL 4398493, at *7 (D.N.J. July 7, 2023). In that case,

the court explained that in the plaintiff's religious accommodation request, he "identifie[d] himself as a Christian and explain[ed] the "authority [he] adhere[s] to is The Holy Bible and that authority is derived from God" and that "as a Christian, [he] cannot according to [his] beliefs and conscience, use these products that have origins in abortion." *Id.* The court also noted the plaintiff's identification of "a Bible passage that provides the foundation for his belief that 'the inmost being is sacrosanct,' which in turn provides the religious basis for his objection to abortion." *Id.* This is very different from Muldoon's reference to her "Christian upbringing" and her unspecified "spiritual and religious beliefs."

Aside from her fetal cell line objection to the COVID-19 vaccines, Muldoon stated in her request a distinctly non-religious reason for not receiving the COVID vaccines: that "[i]njecting the experimental (EUA status) COVID vaccine ingredients into [her] body would be risking physical injury through exposure to contaminants with known and unknown health consequences, and therefore would cause [her] to betray [her] spirituality and moral obligation." JA40. This is not an objection to the COVID-19 vaccine based on religion; it is a health and science-based objection that cannot support a Title VII claim.

In this regard, Muldoon's claim is similar to the claim brought in *Winans, supra.* In that case, a plaintiff had refused to comply with his employer's COVID-19 vaccination requirement, citing both objections to the vaccine based on use of

18

aborted fetal cell lines and other health and science-based objections. The court in *Winans* dismissed the plaintiff's Title VII claim, noting that the plaintiff had "primarily detail[ed] Plaintiff's purely scientific, personal, and medical objections to the vaccine, including his belief that the vaccine is ineffective and his concerns with its potential side effects." *Id.* at *4. In other words, the court found that the plaintiff's objections were actually health and science-based objections that he was attempting to couch as religious beliefs. As such, the court concluded that it could not "reasonably infer, based on the facts alleged in the Complaint, that [the plaintiff's] concerns [we]re religious in nature" and dismissed the plaintiff's religious discrimination claim under Title VII. *Id.*

Similarly, in *Finkbeiner*, *supra*, the court found that the plaintiff's statements that "there are chemicals/carcinogens associated with swab and testing material"; that "testing is toxic"—making her "afraid of the side effects and potential future health risks these chemicals may cause"; and that "testing in this manner is a bad choice for [her] health and body" served to "reinforce[] that her opposition stems from her medical beliefs" and, thus, could not form the basis for a Title VII religious discrimination claim. *Id.* The same is true concerning Muldoon's health-related concerns about the vaccine. She cannot simply repackage such concerns as "religious" objections.

19

For the foregoing reasons and those stated in the District Court's opinion below, the dismissal of Muldoon's Title VII claim should be affirmed. [4]

C.    The Eighth Circuit's Reversal of the District Court's Decision in *Ringhofer* Does Not Require Reversal of the District Court's Dismissal of Appellants' Title VII Claims.

Appellants rely heavily on the recent Eighth Circuit decision in *Ringhofer v. Mayo Clinic*, 102 F.4th 894 (8th Cir. 2024). App. Br. 5, in which the Eighth Circuit reversed the dismissal of the plaintiffs' Title VII claims based on failure to grant a

---

[4] Finn and Muldoon's failure to accommodate claims also fail because they did not adequately inform the HSUS of their religious objection to the COVID-19 vaccines. The second element of a *prima facie* case of failure to accommodate a religious belief requires that the "employee must give the employer 'fair warning' that a particular employment practice will interfere with that employee's religious beliefs." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3rd Cir. 2008) (citing *Reed v. Great Lakes Cos.*, 330 F.3d 931, 935 (7th Cir. 2003) (collecting cases)). "That is because '[a] person's religion is not like [her] sex or race[,]' that is, simply announcing one's belief in a certain religion, or even wearing a symbol of that religion (*i.e.*, a cross or Star of David) does not notify the employer of the particular beliefs and observances that the employee holds in connection with her religious affiliation." *Id.* (quoting *Reed*, 330 F.3d at 935-36). Importantly, courts cannot "charge employers with possessing knowledge about the particularized beliefs and observances of various religious sects." *Id.* (citing *Reed*, 330 F.3d at 36). *See also Chalmers*, 101 F.3d 1012, 1020-21 (4th Cir. 1996) (holding the plaintiff "failed to provide a prima face case or discrimination on a religious accommodation theory" because she had failed to provide "adequate notice" of her religious beliefs."). To the extent Appellants are able to present additional evidence in this lawsuit that would suggest their objections to the COVID-19 vaccine actually are religious in nature, this information would be irrelevant. The HSUS could only act on the information available at the time. Thus, as the HSUS argued to the District Court, the information that Appellants provided to the HSUS during the accommodation process was insufficient as it failed to adequately place the HSUS on notice of the religious nature of their objections to the COVID-19 vaccine.

religious accommodation to a mandatory vaccination policy. To begin, the Eighth Circuit's decision in *Ringhofer* is not binding on this Court. Further, the facts *Ringhofer* are distinguishable from the facts here.

In *Ringhofer*, the court first noted that each plaintiff had adequately alleged that "their Christian religious beliefs prevent them from taking the Covid-19 vaccine." *Ringhofer*, 102 F.4th at 901. This, alone, distinguishes the claims in *Ringhofer* from those in this case.

As demonstrated above, the facts pertinent to each Appellant's claim are vastly different, with respect to both their employment histories at the HSUS and the bases for their religious objections to the vaccine, calling into question why these two would join together in one lawsuit. However, the manner in which Appellants discuss *Ringhofer* in their opening brief suggests that, perhaps, by attempting to merge the statements each of them made in their individual requests for religious accommodations, they thought there was a better possibility that *something* would resonate with a court as religious, when in reality, both put forth secular objections couched in religious language.

In an attempt to capitalize on their decision to file this suit jointly, Appellants assert that the "complaint in the instant case is similar in all material respects to the Title VII complaint filed in the District Court in [*Ringhofer*]." App. Br. 5. Expanding on this assertion, Appellants explain that "in *Ringhofer,* the plaintiffs

21

alleged that the vaccines, conflicted with their views that their body was a 'temple of the Holy Spirit,' that the vaccines were derived from aborted fetal tissue cell lines, and being vaccinated was against their 'conscience.'"  *Id.*  Here, Appellants are trying to reap the benefits of merging each of their allegations together, where separately they are clearly insufficient.  In *Ringhofer*, the court found as follows with respect to three *individual* plaintiffs' complaints:

> Kiel's complaint states that her "religious beliefs prevent her from putting into her body the Covid-19 vaccines ... because they were all produced with or tested with cells from aborted human babies. Receiving the vaccine would make her a participant in the abortion that killed the unborn baby."

> Miller's complaint states that her "religious exemption was based on opposition to the use of vaccines produced with or tested by aborted baby cells.  Plaintiff Miller believes in the sanctity of life from conception until natural death.  She lives her life according to her sincerely held religious beliefs. . . .  She is Christian and has determined she cannot, consistent with her conscience, take the Covid-19 vaccine, and to do so would make her complicit in the killing of the unborn babies from whom the cells used in the vaccines came."

> Ringhofer's complaint states that "his body is a Temple to the Holy Spirit and is strongly against abortion.  Plaintiff Ringhofer believes the Vaccine Mandate violates his religious beliefs and conscience to take the Covid-19 vaccine because the vaccines were produced with or tested with fetal cell lines.  Ringhofer ... [believes] that 'Using the fetal cells in the development of it, knowing about it, is against my religion.'"

*Ringhofer*, 102 F.4th at 901.  The Eighth Circuit addressed *each* of the Plaintiffs' religious accommodation requests *separately* and found them to sufficiently state a religious objection to the vaccine.  What the Eighth Circuit did not do was to

aggregate the allegations of all of the Plaintiffs to determine whether, together, they sufficiently alleged a religious objection to the vaccine.

The facts here are distinguishable. In Finn's case, all that she alleged was that her "conscience and heart are guided by [her] faith in God the Father and his son Jesus Christ" and that the "HSUS policy would unjustly force [her] to act in betrayal to [her] conscience and faith." JA09-10, JA37. Unlike in *Ringhofer*, as the District Court stated, Finn "does not identify if she subscribes to any particular religion or the specific nature of any religious beliefs." JA51. Finn did state that Catholic teachings "align with her faith," but she does not state that she identifies as Catholic or that she currently holds Catholic beliefs.

In Muldoon's case, she did cite "the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals" in her request "as going against her spiritual and religious beliefs." JA12, JA40; *see also* JA53. However, she does not explain what those alleged "spiritual and religious beliefs" are. Quite the opposite: Muldoon merely alleges that she stated in her request that "[a]ccepting this vaccine would compromise the religious beliefs *founded in [her] Christian upbringing* …." JA40 (emphasis added). Muldoon does not assert she holds such beliefs now, unlike the plaintiffs in *Ringhofer*. 102 F.4th at 901.[5]

---

[5] Notably, in *Ringhofer*, plaintiff Miller not only specifically identified as "Christian," but also stated that she "believes in the sanctity of life from conception until natural death. She lives her life according to her sincerely held religious

While Appellants have asserted that their claims are similar to those in *Ringhofer*, they are clearly distinguishable, as detailed above. Neither Appellant's reliance on this case requires reversal of the District Court's dismissal of their Title VII claims.

## II.    THE DISMISSAL OF APPELLANTS' ADA CLAIMS MUST BE AFFIRMED

Finn and Muldoon also asserted two ADA claims in their Complaint. First, they argue that by "demand[ing] that employees disclose their medical and COVID-19 vaccination status," the HSUS violated the ADA by conducting an unlawful medical examination or inquiry. JA19. Further, they argue that such examination or inquiry was not job related or consistent with business necessity. JA20. Additionally, Finn and Muldoon allege that the HSUS regarded them as disabled and terminated their employment on this basis. JA25-26.

### A.    Disability-Related Inquiry

The ADA's prohibitions on disability-related inquiries were designed to prevent employers from making inquiries of its employees that would tend to

---

beliefs," thereby further connecting her "fetal cell line" argument to her religion in contrast to Muldoon. The district court below, in that case, dismissed that plaintiff's claim based on a failure to exhaust administrative remedies, not based on a failure to demonstrate that her objections were religious in nature. The district court did find that the two other plaintiffs described above, Ringhofer and Kiel, did not sufficiently allege religious objections to the vaccine and Appellee asserts that the decision below was the correct one.

disclose the existence of a disability. The U.S. Equal Employment Opportunity Commission—the federal agency charged with enforcing the ADA—has made it abundantly clear that an employer's inquiry about its employees' vaccination status does not constitute an impermissible disability-related inquiry under the ADA. The EEOC states this definitively in the Technical Assistance document it published during the pandemic:

> "When an employer asks employees whether they obtained a COVID-19 vaccination, the employer is not asking the employee a question that is likely to disclose the existence of a disability; there are many reasons an employee may not show documentation or other confirmation of vaccination besides having a disability. Therefore, requesting documentation or other confirmation of vaccination is not a disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply."

(*What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, at section K.9, available at https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#K.9) at Section K.9 (last visited July 28, 2024).

Federal courts within the Fourth Circuit and elsewhere have upheld the EEOC's interpretation of the ADA in this regard. *See e.g., Apuzza v. NYU Langone Long Island*, No. 222-CV-7519 NJC/JMW, 2023 WL 9022790, at *8 (E.D.N.Y. Dec. 29, 2023) ("[I]nformation about vaccine status is not considered a disability-related inquiry or medical examination as a matter of law."); *Jorgenson v. Conduent Transp. Solutions, Inc.*, No. SAG-22-01648, 2023 WL 1472022, at *5 (D. Md. Feb. 2, 2023)

(dismissing ADA claim because employer's COVID-19 vaccine "attestation requirement did not constitute a medical examination or an inquiry about a disability or disabling condition."); *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at \*6 (D. Md. Oct. 17, 2023) ("AstraZeneca's inquiry about vaccination status, however, did not constitute a medical examination or an inquiry about a disability or disabling condition … both vaccinated and unvaccinated people are able to perform their work and engage in major life activities without impairment or limitation.") (citing *Jorgenson*, 2023 WL 1472022, at \*5); *Friend v. AstraZeneca,* No. SAG-22-03308, 2023 WL 3390820 (D. Md. May 11, 2023) (dismissing ADA claim because "AstraZeneca's inquiry about vaccination status … did not constitute a medical examination or an inquiry about a disability or disabling condition.  As noted above, both vaccinated and unvaccinated people are able to perform their work and engage in major life activities without impairment or limitation.  Thus, an inquiry about vaccination status does not implicate any disability.").[6]  Although Finn and Muldoon argue that these cases are not binding on this Court, App. Br. 38, Appellants have not cited a single case  in which any court

---

[6] Appellants also spend significant time arguing about the lack of business necessity, App. Br. 33-35, 40-42, which is irrelevant here.  Business necessity enables an employer to make a disability-related inquiry, but an inquiry about vaccination, as detailed above, is not a disability-related inquiry.

has held that an employer's inquiry into its employees' COVID-19 vaccination status is violative of the ADA.

For the foregoing reasons, and those stated in the District Court's opinion, the dismissal of Appellants' disability discrimination claims based on an allegedly unlawful disability-related inquiry under the ADA should be upheld.

B.    Regarded As Disability Discrimination

Appellants contend that the District Court improperly found that Appellants did not allege sufficient facts to state a viable ADA claim. Appellants claim that the HSUS violated the ADA because, by implementing a mandatory COVID vaccination policy, it regarded all of its unvaccinated employees as having a disability. However, Appellants' Complaint is deficient on its face.

The ADA defines disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." *Gentry v. E. W. Partners Club Mgmt. Co. Inc.*, 816 F.3d 228, 236 (4th Cir. 2016) (quoting 42 U.S.C. § 12102(1)).

In order to set forth a claim of "regarded as" discrimination under the ADA, as Finn and Muldoon have attempted to do, a plaintiff must establish discrimination "because of an actual or perceived physical or mental impairment." *Miller v. Maryland Dep't of Nat. Res.*, 813 F. App'x 869, 876 (4th Cir. 2020) (quoting 42

U.S.C. § 12102(3)). Being unvaccinated is not a physical or mental impairment. *See e.g.*, *Speaks v. Health Systems Management, Inc.*, Civil No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("[r]efusing to get a vaccine required by an employer is not itself an 'impairment' of any sort," but rather a wholly "personal choice."); *Halczenko v. Ascension Health, Inc.*, No. 1:21-CV-02816-JPH-MG, 2023 WL 3558907, at *2 (S.D. Ind. May 19, 2023) ("The decision to get a vaccination, or not, required by an employer is not itself an 'impairment,' rather this is a personal choice.").

Given this, federal courts have uniformly rejected the claim that being unvaccinated can give rise to a viable "regarded as" claim under the ADA. *See e.g.*, *Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-CV-01092 (APM), 2023 WL 2455678, at *4 (D.D.C. Mar. 10, 2023) ("Every court that has considered this question has held the same."); *Schneider v. County of Fairfax*, Civil No. 1:22-CV-871 (LMB/WEF), 2023 WL 2333305, at *5 (E.D. Va. March 2, 2023) (holding that a refusal to follow requirement to report vaccination status does not create regarded as claim); *Jorgenson*, 2023 WL 1472022, at *4 (ruling that the employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired")); *Leggo v. M.C. Dean, Inc.*, Civil No. 1:22-CV-374 (LMB/IDD), 2023 WL 1822383, at *4

28

(E.D. Va. Feb. 7, 2023) (finding that a company decision requiring employees to attest to their vaccination status does not plausibly reflect a determination or belief that any employee is disabled)*; Speaks*, 2022 WL 3448649, at *5 (finding no plausible "regarded as" claim based on employee's decision not to get vaccinated); *Shklyar v. Carboline Co.,* Civil No. 4:22 CV 391 RWS, 2022 WL 2867073 (E.D. Mo. July 21, 2022), *aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023) ("[T]o infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its ... employees as having a disability."); *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 549–50 (E.D. Va. 2022) (holding that "possible future exposure to COVID-19 [based on age] does not constitute an impairment under the ADA"); *accord Covel v. Cmty. Physicians of N. Port, P.A.*, No. 23-10853, 2024 WL 1923256, at *4 (11th Cir. May 1, 2024) (holding, in the context of a COVID-19-related mask mandate, that "regarding employees as at risk of imminently contracting a contagious disease does not meet the statutory definition of disability") (citing *EEOC v. STME, LLC*, 938 F.3d 1305, 1315–16 (11th Cir. 2019)0.

Although Appellants criticize the District Court for relying exclusively on district court cases, App. Br. 43, it appears that, at the time the District Court dismissed Appellants' claims, no federal court of appeals had yet addressed the issue

of whether the implementation of a mandatory COVID vaccination policy in and of itself gives rise to a "regarded as" disabled claim under the ADA.  However, after the District Court's opinion in this case, but prior to Appellants filing their opening brief, the Second Circuit, in *Sharikov v. Philips Medical Systems MR, Inc.*, joined the bevy of district courts that have held that a vaccine mandate applied to all employees, other than those who obtained medical exemptions or religious accommodations, was not evidence of the employer regarding any employee as being disabled.  103 F.4th 159, 168–69 (2d Cir. June 4, 2024) (noting that an impairment is a disability within the meaning of the ADA if it substantially limits the ability of an individual to perform a major life activity "as compared to most people in the general population" and, thus, "to be perceived as having a disability, one must be perceived as different from most people in the general population," which is not the case where a vaccine mandate is applied to all employees absent an exemption or accommodation).

The HSUS is not aware of a single court that has found a cognizable claim for an employee being "regarded as" disabled in the context of COVID-19 vaccine mandates, as evidenced by the fact that Appellants have not cited any such case. Indeed, the only case law on which Appellants rely in their opening brief are two 11th Circuit cases and a district court case out of the Northern District of Georgia, which they cite for the following general proposition:

> An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter *because of an actual or perceived physical or mental impairment* whether or not the impairment limits or is perceived to limit a major life activity.

App. Br. at 45 (emphasis added) (citing 42 U.S.C. § 12101(3)(A); *E.E.O.C. v. STME, LLC*, 938 F.3d 1305, 1314 (11th Cir. 2019); *Forsyth v. Univ. of Alabama, Bd. of Trustees*, 2021 WL 4075728, at *4 (11th Cir. 2021); *Coker v. Enhanced Senior Living, Inc.*, 897 F. Supp. 2d 1366, 1374 (N.D. Ga. 2012)).  This does nothing to get Appellants around the fact that neither of them had or were perceived to have a *physical or mental impairment* of any kind.[7]

Appellants argue that "Finn and Muldoon alleged that HSUS viewed their vaccination status as impairing their ability to work [and, therefore, this] allegation must be accepted as true."  However, if vaccination status is not a mental or physical

---

[7] As the District Court held here, remaining unvaccinated is a personal choice, not an impairment.  JA57. Appellants have tried to characterize being unvaccinated against COVID-19 as an "impairment" that substantially limits major life activities with a laundry list of "limitations imposed" on unvaccinated individuals at the time. JA25; App. Br. 43 (citing same).  First, many of the activities on this list are not actually activities in which an unvaccinated person is prevented from engaging (e.g., "attending any sort of gathering of people" or "going to parties").  Moreover, "any such limitations are caused by societal rules, not by the vaccination status of those subject to those rules.  Vaccination status itself poses no hindrance to the performance of any tasks." *Foshee v. AstraZeneca Pharms. LP*, No. CV SAG-23-00894, 2023 WL 6845425, at *5 (D. Md. Oct. 17, 2023) (citing *Jorgenson v. Conduent Transp. Sols., Inc.*, No. 22-CV-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023)); *see also Shigley v. Tydings & Rosenberg LLP*, No. CV JKB-23-02717, 2024 WL 1156613, at *6 (D. Md. Mar. 18, 2024) (quoting *Foshee*, 2023 WL 6845425, at *5).

impairment under the ADA, it does not matter of it affects an individual's ability to work.  It is clear that the HSUS terminated Appellants for their failure to abide by a workplace policy requiring vaccination.  *See, e.g., Speaks v. Health Sys. Mgmt., Inc.*, 2022 WL 3448649, at *5 (W.D.N.C. Aug. 17, 2022) ("Again, there is no plausible basis to conclude that Health Systems regarded Speaks as having a 'physical or mental impairment.' The Company only regarded Speaks as being required—like all of its employees—to obtain a COVID-19 vaccine or be approved for an exemption and then 'regarded' her as having failed to do so by the deadline to become vaccinated.").

For the foregoing reasons, the District Court's dismissal of Appellants' claims of disability discrimination based on being regarded as disabled should be affirmed.

## <u>CONCLUSION</u>

As detailed above, the decision of the District Court dismissing all of Appellants' claims should be affirmed.

DATED:  August 2, 2024                Respectfully submitted,

By:  */s/*  Karla Grossenbacher
_____
Karla Grossenbacher
kgrossenbacher@seyfarth.com
Leslie V. Maffeo
lmaffeo@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC  20004
Phone: (202) 463-2400
Fax: (202) 828-5393

*Counsel for Appellee*

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[ X ] this brief contains [*8,026*] words.

[　] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2.      This brief complies with the typeface and type style requirements because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

[　] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated:  <u>August 2, 2024</u>                      <u>/s/ Karla Grossenbacher</u>
                                                                      *Counsel for Appellee*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 2nd day of August, 2024, I caused this Brief of

Appellee to be filed electronically with the Clerk of the Court using the CM/ECF

System, which will send notice of such filing to the following registered CM/ECF

users:

Francis J. Collins
Samantha M. Safchinsky
KSC Law
201 North Charles Street, 10th Floor
Baltimore, Maryland  21201
(410) 244-1010

*Counsel for Appellant*

/s/ Karla Grossenbacher
*Counsel for Appellee*