# CASE NO. 24-1416

## IN THE
## UNITED STATES COURT OF APPEALS
### FOR THE
## FOURTH CIRCUIT

**JENNIFER FINN and KATHERINE MULDOON,**

*Appellants-Plaintiffs,*

**vs.**

**THE HUMANE SOCIETY OF THE UNITED STATES**

*Appellee-Defendant.*

On Appeal from the United States District Court for the District of Maryland
Civil Action No. 1:23-cv-02107-GLR
(The Honorable George L. Russell, III, presiding)

## APPELLANTS REPLY BRIEF

| | |
|---|---|
| Francis J. Collins, Esq. | Samantha M. Safchinsky, Esq. |
| KSC Law | KSC Law |
| 201 N. Charles St., Tenth Floor | 201 N. Charles St., Tenth Floor |
| Baltimore Maryland 21201 | Baltimore Maryland 21201 |
| Fed Bar # 04272 | Federal Bar # 30982 |
| AIS # 8501010118 | AIS # 2311290107 |
| fjcollins@kscadvocates.com | safchinsky@kscadvocates.com |
| 410-244-1010 | 410-244-1010 |
| Attorney for Appellants | Attorney for Appellants |

## TABLE OF CONTENTS

i

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Mayorkas*, 143 S. Ct. 1312 (2023)..........................................................2

*Bazinet v. Beth Israel Lahey Health, Inc.*, 2024 WL 3770708 (1st Cir. 2024)......8, 9

*Beuca v. Washington State Univ.*, 2024 WL 3450989 (9th Cir. 2024)....................11

*Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017 (7th Cir. 2024) ................................6, 7

*Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024)................................9

*Hampton-Davis v. Froedtert Health, Inc.,* 2024 WL 3410700 (E.D. Wis. 2024)...12

*Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680 (1989).............................8

*Lucky v. Landmark Medical of Michigan,* 103 F.4th 1241 (6th Cir. 2024) ............7, 8

*Lumley v. Town of Knightdale, N. Carolina,* 2024 WL 3678348 (E.D.N.C. 2024) 11

*Norgren v. Minnesota Dep't of Human Services*, 96 F.4th 1048 (8th Cir. 2024)......9

*Passarella v. Aspirus, Inc.*, 108 F.4th 1005 (7th Cir. 2024)......................... 4, 5, 6, 7

*Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024) .....................7

*Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273 (1987)...............................16

*Shklyar v. Carboline Co,* 2022 WL 2867073 (E.D. Mo., 2021), *aff'd* 2023 WL 1487782 (8th Cir. 2023) ..............................................................................15

*Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir. 2024) ...............................10

*Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707 (1981)........5

*Winans v. Cox Auto. Inc.*, 669 F.Supp.3d 394 (E.D. Pa 2023)................................11

**Other Authorities**

U.S. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (2023).............................................5

ii

# APPELLANTS' REPLY BRIEF

## I. INTRODUCTION

Religious freedom is one of the bedrocks of American life and jurisprudence. Since the time of the pilgrims on Plymouth Rock and the first Catholic Mass on St. Clement's Island in Maryland in 1634, Americans have jealously guarded their God-given right to practice their religion in the manner they choose. In drafting the Declaration of Independence and the Constitution, the founding fathers of the United States made religious freedom a cornerstone of American life. Inherent in religion is, typically, the belief in a supreme being, and the belief that the existence of a supreme being matters. Adherents of religion will often take the view that God's law takes precedence over civil law. Based on the theology and tenets of their religion they form their conscience and moral views.

On the other hand, society and the government properly seek to provide for public safety and, in the face of a world-wide pandemic, may pass rules, regulations, and legislation that conflict with the religious views of some of its citizens. Thankfully, Congress had the foresight to establish a framework for resolving such conflicts. In relation to governmentally imposed rules, citizens can rely on the First Amendment. In the workplace, workers can rely on Title VII. Those laws establish a workable process for honoring an individual's freedom of religion, while at the same time, recognizing and providing for public safety concerns. The law allows for the greatest religious freedom possible. However, if one person's religious

1

freedom creates a "direct threat" to the welfare of another person, limitations can be imposed. Concomitantly, if an employer's policies conflict with the religious freedom of an employee, the employer is obliged to seek a "reasonable accommodation."

Justice Gorsuch recently drew some lessons out of the COVID-19 pandemic:

> Doubtless, many lessons can be learned from this chapter in our history, and hopefully serious efforts will be made to study it. One lesson might be this: Fear and the desire for safety are powerful forces. They can lead to a clamor for action—almost any action—as long as someone does something to address a perceived threat. A leader or an expert who claims he can fix everything, if only we do exactly as he says, can prove an irresistible force. We do not need to confront a bayonet, we need only a nudge, before we willingly abandon the nicety of requiring laws to be adopted by our legislative representatives and accept rule by decree. Along the way, we will accede to the loss of many cherished civil liberties…We may even cheer on those who ask us to disregard our normal lawmaking processes and forfeit our personal freedoms. Of course, this is no new story. Even the ancients warned that democracies can degenerate toward autocracy in the face of fear.

*Arizona v. Mayorkas*, 143 S. Ct. 1312, 1315 (2023) (Gorsuch, J., concurring).

The instant case, also arising out of the COVID-19 pandemic, involves an employer that, out of irrational fear, imposed a vaccine mandate on all its workers, including those who worked from home. This case presents a set of facts not seen before the COVID pandemic, but the law protecting religious freedom has not changed. Courts and juries are not competent to decide cases based on theological debates, but they can determine whether an employee's religious views can be reasonably accommodated. The District Court erred by discounting Finn and

2

Muldoon's clear references to their religious beliefs and by failing to give Finn and Muldoon the protections provided by Title VII.

The District Court also erred when it dismissed Finn and Muldoon's disability discrimination claims under the Americans with Disabilities Act (ADA). HSUS violated the ADA when it inquired about Finn and Muldoon's vaccination status because such an inquiry was neither job related nor consistent with business necessity. HSUS also violated the ADA when it regarded Finn and Muldoon as disabled due to their status as unvaccinated.

## II.  ARGUMENT

### A.  RECENT CIRCUIT COURT DECISIONS SUPPORT APPELLANTS' ARGUMENT THAT THE DISTRICT COURT ERRED BY PARSING APPELLANTS' STATEMENTS IN SEARCH OF NON-RELIGIOUS JUSTIFICATIONS FOR OPPOSING THE VACCINES.

The District Court explicitly ruled against Finn and Muldoon on the basis that they had not alleged religious opposition to the vaccines but, instead, relied on "secular morality or personal health, convenience, preference or whim." JA51. The District Court and Appellee's Brief do little to address the Supreme Court precedent that defines religion broadly and according to one's own "scheme of things."

After Finn and Muldoon filed their Opening Brief several COVID related Circuit Court decisions were issued that lend further support for Finn and Muldoon's view that the District Court applied an unduly demanding pleading standard when

3

granting Appellee's motion to dismiss the complaint. The plethora of District Court decisions appear result oriented, and some were influenced by the fear highlighted by Justice Gorsuch, quoted above. The Circuit Courts on the other hand are unanimous in giving religion a wide berth and focusing on reasonable accommodations.

In *Passarella v. Aspirus, Inc.*, the employees cited both religious and secular reasons for needing an accommodation from the vaccine. 108 F.4th 1005, 1007-08 (7th Cir. 2024). The Seventh Circuit held that the exemption requests were "based on their face and at least in part on a dimension of the plaintiffs' religious beliefs" and were therefore "religious in nature within the meaning of Title VII" at the pleading stage. *Id.* at 1009.

The Seventh Circuit articulated a standard for analyzing the sufficiency of a religious discrimination complaint related to COVID vaccination:

> Applying the statutory language necessarily requires an exercise of judgment: the standard is not amenable to formulaic resolution like solving a math equation. To the contrary, its application requires a holistic assessment of the terms of the employee's exemption request, with the controlling inquiry at the pleading stage being whether the employee plausibly based her vaccination exemption request <u>at least in part</u> on an aspect of her religious belief or practice.
>
> Notice a point inherent in our articulation of this standard. An employee may object to an employer's vaccine mandate on both religious and non-religious grounds—for example, on the view that receiving the vaccine would violate a religious belief and implicate health and safety concerns. Congress permitted this, as we see no other way to give effect to the breadth of its definition of "religion"—as covering "all aspects" of an employee's religious observance, practice,

4

> and belief. *Id.* And, for its part, the Equal Employment Opportunity Commission, in implementing this same definition, has likewise emphasized that a religious objection to a workplace requirement may incorporate both religious and secular reasons. *See* U.S. EEOC, What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws (2023).

*Id.* (emphasis added). The Seventh Circuit Court of Appeals explained further:

> Perhaps above all else, then, one guidepost is clear: "[c]ourts should not undertake to dissect religious beliefs ... because [they] are not articulated with the clarity and precision that a more sophisticated person might employ." [*Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 715, 101 S. Ct. 1425 (1981)]. Nor should courts require employees to choose between the binary alternatives of a religious reason and non-religious reason to explain their perspective—here, their reason for seeking an exemption from mandatory COVID vaccination.
>
> Remember, too, what is being reviewed—not statutory language debated and refined by lawmakers or letters drafted by counsel, but instead an employee's explanation (whether typed or handwritten on a pre-printed form) for why they seek an exemption from COVID vaccination. Yes, the explanation must satisfy the standard we have articulated. But, no, courts should not expect, much less require, exemption requests to sound like they were written by someone with legal training. <u>If an accommodation request can be read on its face as plausibly based in part on an aspect of the plaintiff-employee's religious belief or practice, that is enough to survive a motion to dismiss</u>.

*Id.* at 1011 (emphasis added).

On the same day *Passarella* was decided the Seventh Circuit reversed and remanded another District Court case on the same grounds. The Court held "an employee seeks accommodation because of their religion when their request, by its terms, is plausibly based at least in part on some aspect of their religious belief or

5

practice." *Bube v. Aspirus Hosp., Inc.*, 108 F.4th 1017, 1018 (7th Cir. 2024). The Court warned that in the Title VII context, "courts should avoid putting themselves in the impossible position of trying to define religious legitimacy and viewpoint sufficiency." *Id.* at 1021.

In both *Passarella* and *Bube*, the Seventh Circuit cited to and relied on the Eighth Circuit decision discussed in Appellants' Opening Brief, *Ringhofer v. Mayo Clinic, Ambulance*, 102 F.4th 894 (8th Cir. 2024). The Court in *Passarella* and *Bube* also relied on the Sixth Circuit decision in *Lucky v. Landmark Medical of Michigan,* 103 F.4th 1241 (6th Cir. 2024). In *Lucky,* the Sixth Circuit reversed and remanded a District Court's decision which granted an employer's motion to dismiss. The plaintiff, while interviewing for a position at Landmark, was asked about her vaccination status. *Id.* at 1242. When she told the employer she was not vaccinated against COVID-19 because of her sincerely held religious beliefs, the employer ended the interview and said Landmark already rejected ten other candidates for this reason and would not make any accommodations for unvaccinated individuals. *Id.* The plaintiff filed suit and alleged she is a non-denominational Christian who believes her body is a temple that would be defiled if she received the COVID-19 vaccine. *Id.* She alleged that she prayed to God for guidance on the vaccine and was told by God not to receive it because it would cause her spiritual harm. *Id.* The District Court dismissed her complaint because she had not tied her religious objection to a specific tenet or principle in her religion that

6

prevents her from receiving the vaccine. *Id.* at 1243. The District Court said her complaint only offered "naked assertions devoid of further factual enhancement'." *Id.* (internal citation omitted). The Sixth Circuit reversed and held that plaintiff's "allegations were almost self-evidently enough to establish, at the pleadings stage, that her refusal to receive the vaccine was an 'aspect' of her religious observance or belief." *Id.* In regard to the issue of a specific tenet tied to the religious belief, the Sixth Circuit said: "'It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith…'" *Id.* (quoting *Hernandez v. Comm'r of Internal Revenue*, 490 U.S. 680, 699, 109 S. Ct. 2136 (1989)).

In *Bazinet v. Beth Israel Lahey Health, Inc.*, No. 24-1148, 2024 WL 3770708, at *5 (1st Cir. Aug. 13, 2024), the First Circuit Court of Appeals applied the *Ringhofer* analysis and reversed the District Court's grant of a motion to dismiss under facts remarkably similar to those of Finn and Muldoon. The plaintiff's religious exemption request relied on the fact that the vaccines were developed using aborted fetal tissue cell lines and also pointed out the lack of efficacy of the vaccines. *Id.* at *6. The First Circuit was not troubled by the fact that the employee had both religious and secular reasons for rejecting the vaccines. *Id.*

Similar allegations have been determined sufficient by the Eighth Circuit in *Cole v. Grp. Health Plan, Inc.*, 105 F.4th 1110 (8th Cir. 2024). In *Cole,* the employer contended that the employee had "not alleged she was treated differently from similarly situated employees who [did] not share her religious beliefs since

7

unvaccinated employees with medical exemptions were subject to the same restrictions." *Id.* at 1114.  The Eighth Circuit rejected the employer's argument, finding that "we must grant all reasonable inferences in [the employee's] favor and cannot assume at this early juncture that religious discrimination did not occur because one subset of potential comparators also faced disparate treatment." *Id.*  The Eighth Circuit noted that "courts generally do not inquire about comparators until summary judgment." *Id.* (citing *Norgren v. Minnesota Dep't of Human Services*, 96 F.4th 1048, 1056 (8th Cir. 2024)).

    The U.S. Court of Appeals for the Third Circuit is in accord.  It revived the claim of a Philadelphia District Attorney's Office employee who was terminated after her employer denied her religious exemption request.  *Spivack v. City of Philadelphia*, 109 F.4th 158 (3d Cir. 2024).  The office's policy originally was to evaluate each religious exemption request on a case-by-case basis, but then the office abruptly changed the policy and denied all religious exemption requests.  *Id.* at 163.  The employee sued, claiming that the mandate violated the Free Exercise Clause.  *Id.* at 161.  The Third Circuit held that the District Court improperly granted the defendants' motion for summary judgment because it overlooked two disputes of material facts that affect the analysis as to the policy's neutrality and general applicability.  *Id.* at 167.  In deposition, the plaintiff's supervisor made comments that could indicate anti-religious bias.  *Id.*  It was also unclear whether he analyzed plaintiff's exemption request under the original policy or the updated policy.  *Id.*

8

Because these factual disputes must be resolved by a jury, the Court remanded the case for trial. *Id.* at 161.

In Finn and Muldoon's Opening Brief, they addressed a decision out of Washington State. They erroneously included an incorrect name and citation calling the case *Eeuca v. Washington State University* and apologize for that error. In the meantime, however, the Court of Appeals for the Ninth Circuit became another Circuit to reverse a District Court's dismissal of a religious discrimination claim related to the COVID vaccines. The Court reversed the District Court decision, finding that the lower court had "erred in both applying the *de minimis standard* and in its related futility of amendment analysis." *Beuca v. Washington State Univ.*, No. 23-35395, 2024 WL 3450989, at *2 (9th Cir. July 18, 2024).

The District Court and HSUS rely on *Winans v. Cox Auto. Inc.*, 669 F.Supp.3d 394 (E.D. Pa 2023) for the proposition that opposition to the use of aborted fetal tissue cell lines "does not amount to a religious belief." JA53. Yet, that holding has not been affirmed by the appellate court in that case or in other cases. On the contrary, that case was remanded after an appeal for lack of a final judgment and remains active at this time. In light of the Circuit Court decisions that stand in opposition to *Winans,* recent District Courts have called into question the District Court's analysis in *Winans*: *See, e.g.*, *Lumley v. Town of Knightdale, N. Carolina*, No. 5:23-CV-663-FL, 2024 WL 3678348, at *4 (E.D.N.C. Aug. 6, 2024) (plaintiff's religious objection to the vaccine, which included the use of aborted fetal cell lines

9

in its creation, "does not allege merely a negligible or nominal connection to religion"); *Hampton-Davis v. Froedtert Health, Inc.,* No. 22-CV-1437-SCD, 2024 WL 3410700, at *5 (E.D. Wis. July 15, 2024) (plaintiff's explanation that the use of fetal cell lines in the vaccine goes against her religious beliefs "sufficiently states a religious belief underpinning the plaintiff's opposition to the vaccine").

In short, Circuit Court decisions have uniformly held, in COVID-19 religious discrimination cases, that opposition to the vaccines based on one's conscience or prayerful reflection, is properly considered religious in nature. Sometimes a religious person articulates that her conscientious objection arises out of her concern for the sanctity of life and the use of aborted fetal tissue cell lines in the development of the vaccines. Others articulate that her conscientious objection arises out of the view that her body is a temple of the Holy Spirit and would be defiled by introduction of the vaccine. There are no "magic words" that must be used and an employee's accommodation request must not be dissected as if the employee were an attorney. Regardless, once an employee articulates an objection to the vaccines that touches on her religion, conscience, or morality, the conversation must shift to reasonable accommodation, not theology.

One reason given for rejecting Finn and Muldoon's claims is that conscience does not create a "'blanket privilege' with no principled limitation in scope." JA53. This strawman, relied on by the lower court, has no place in the discussion and has not been adopted by any appellate court. If there is no reasonable accommodation,

10

the employee may be fired. But if the employee has articulated a religious reason, artfully or inartfully, and may be reasonably accommodated, there is no harm to the employer by retaining the employee. To fire the employee when reasonable accommodations are available is to commit a violation of Title VII.[1]

> **B.    THE DISTRICT COURT ERRED BY DISMISSING COUNT 2 BECAUSE THE MEDICAL INQUIRIES APPELLEE MADE WERE NOT JOB RELATED AND CONSISTENT WITH BUSINESS NECESSITY AND WERE MORE INTRUSIVE THAN NECESSARY.**

HSUS requests in its brief that this Court affirm the lower court's ruling that Finn and Muldoon failed to state a claim under the ADA. HSUS argues that demanding information about an employee's vaccination status is not a "medical inquiry." HSUS also argues that vaccination status does not implicate the "regarded as" prong of the ADA. Although HSUS cites numerous District Court decisions on these points, it has no appellate authority on which to rely.

### 1. Vaccination status is a medical inquiry

An inquiry regarding an employee's vaccination status is patently an inquiry regarding the employee's medical treatment, or lack thereof, and regarding the

---

[1] In footnote 4, HSUS raises an alternate reason for affirmance which was not addressed by the Court below. It contends that Finn and Muldoon did not give HSUS adequate notice of the religious nature of their opposition to the vaccines. Finn and Muldoon disagree, but since this was not addressed by the Court below, and is merely raised in a footnote, this argument must be addressed by the lower court before this Court can address it.

11

employee's immune system. To suggest that this inquiry is non-medical in nature is disingenuous

Several District Courts have narrowly interpreted the ADA's prohibition on medical inquiries to include only those inquiries that are likely to disclose the existence of a disability. A corollary of this interpretation is the concept that an employer has free rein to make any medical inquiries as long as they "are not likely to disclose a disability." Thus, under this interpretation an employer may insist on disclosure of an employee's sexual habits and birth control methods, cosmetic surgery and procedures, past orthopedic injuries, or any other medical treatment, condition or procedure that does not involve a disability. In short, an employer could require all employees and employment candidates to disclose their entire medical history as long as it warns the employees and employment candidates that they need not disclose a disability. The Fourth Circuit has never interpreted the ADA thusly and has protected the medical confidentiality of an employee's medical history. It must continue to do so.

The proper analysis of what must be disclosed by an employee is found in the statutory language of the ADA. An employer may not make inquiries of or discriminate against an employee on account of a disability unless the employee medical condition creates a "direct threat" to others or the inquiries are narrowly tailored to be "job-related" and "consistent with business necessity."

12

## 2. "Regarded As"

HSUS opposes Finn and Muldoon's argument that they were "regarded as" disabled by invoking the well-worn flood-gate argument. It quotes a District Court as saying: "[T]o infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its … employees as having a disability." Appellee's Brief p. 29, citing *Shklyar v. Carboline Co,* 2022 WL 2867073 (E.D. Mo., 2021), *aff'd* 2023 WL 1487782 (8th Cir. 2023). This syllogistic fallacy arises out of the premise that the employer would only impose a mandate on disabled workers. That is a false premise—an employer is free to encourage its employees to be vaccinated, regardless of whether they are disabled. An employer need not consider all employees disabled to request that they be vaccinated. It may feel it is doing a good thing. The logical reasoning changes when the employer imposes a vaccine mandate and then requires all employees to disclose their vaccination status. When the employer treats unvaccinated employees as unable to work, it is treating them differently from the vaccinated employees and is treating them as unable to fulfill the essential functions of their position—i.e., they are regarded as disabled.

## III. CONCLUSION

The Supreme Court warned us in the context of a disability discrimination case that the fear of contagion does not trump our right to be free from

13

discrimination. *Sch. Bd. of Nassau Cnty., Fla. v. Arline*, 480 U.S. 273, 284-85 (1987). The concerns raised by the Supreme Court apply equally to religious and disability discrimination and vaccines.

The District Court must be reversed because Finn and Muldoon articulated religiously based opposition to the vaccines. At that point, HSUS should have proceeded to analyze whether Finn and Muldoon could be accommodated. The District Court erred when it parsed the words of the vaccine exemption requests and held that they do not sufficiently link to religion.

HSUS regarded its employees as disabled and violated the ADA by making medical inquiries and conducting medical examinations of its employees that were neither job-related nor consistent with business necessity. Finn and Muldoon were working at home – they did not pose any sort of threat to their co-workers, much less a "direct threat." For these reasons, Finn and Muldoon respectfully request that this Court reverse the District Court's decision.

14


Respectfully submitted,

**KSC LAW**

By: ________/s/__________________
Francis J. Collins, Esq.
AIS ID No. 8501010118
Fed Ct. # 04272
fjcollins@kscadvocates.com, and
Samantha M. Safchinsky, Esq.
safchinsky@kscadvocates.com
201 N. Charles Street, Tenth Floor
Baltimore, Maryland 21201
(410) 244-1010 (telephone)
(410) 244-8001 (fax)

# Certificate of Compliance

## UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

No. 24-1418    Caption: Finn et al. v. Humane Society of the United States

### CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT
Type-Volume Limit, Typeface Requirements, and Type-Style Requirements

**Type-Volume Limit for Briefs if Produced Using a Computer:** Appellant's Opening Brief, Appellee's Response Brief, and Appellant's Response/Reply Brief may not exceed 13,000 words or 1,300 lines. Appellee's Opening/Response Brief may not exceed 15,300 words or 1,500 lines. A Reply or Amicus Brief may not exceed 6,500 words or 650 lines. Amicus Brief in support of an Opening/Response Brief may not exceed 7,650 words. Amicus Brief filed during consideration of petition for rehearing may not exceed 2,600 words. Counsel may rely on the word or line count of the word processing program used to prepare the document. The word-processing program must be set to include headings, footnotes, and quotes in the count. Line count is used only with monospaced type. See Fed. R. App. P. 28.1(e), 29(a)(5), 32(a)(7)(B) & 32(f).

**Type-Volume Limit for Other Documents if Produced Using a Computer:** Petition for permission to appeal and a motion or response thereto may not exceed 5,200 words. Reply to a motion may not exceed 2,600 words. Petition for writ of mandamus or prohibition or other extraordinary writ may not exceed 7,800 words. Petition for rehearing or rehearing en banc may not exceed 3,900 words. Fed. R. App. P. 5(c)(1), 21(d), 27(d)(2), 35(b)(2) & 40(b)(1).

**Typeface and Type Style Requirements:** A proportionally spaced typeface (such as Times New Roman) must include serifs and must be 14-point or larger. A monospaced typeface (such as Courier New) must be 12-point or larger (at least 10½ characters per inch). Fed. R. App. P. 32(a)(5), 32(a)(6).

This brief or other document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. R. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

[✓] this brief or other document contains __3,682__ [state number of] words

[ ] this brief uses monospaced type and contains _____ [state number of] lines

This brief or other document complies with the typeface and type style requirements because:

[✓] this brief or other document has been prepared in a proportionally spaced typeface using __Word__ [identify word processing program] in _____ [identify font size and type style]; **or**

[ ] this brief or other document has been prepared in a monospaced typeface using _____ [identify word processing program] in _____ [identify font size and type style].

(s) Francis J. Collins

Party Name Appellants

Dated: 8/21/2024


