# 24-1416

# United States Court of Appeals
## for the
## Fourth Circuit

JENNIFER FINN; KATHERINE MULDOON,

*Plaintiffs/Appellants*,

— v. —

HUMANE SOCIETY OF THE UNITED STATES,

*Defendant/Appellee.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND AT BALTIMORE

## SUPPLEMENTAL BRIEF OF APPELLEE

Karla Grossenbacher
Leslie V. Maffeo
SEYFARTH SHAW LLP
975 F. Street, N.W.
Washington, DC  20004
(202) 463-2400

*Counsel for Appellee*



(800) 4-APPEAL • (JOB 331804)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. 24-1416     Caption: Finn, et al. v. The Humane Society of the United States

Pursuant to FRAP 26.1 and Local Rule 26.1,

The Humane Sociaety of the United States
(name of party/amicus)

who is _____Appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity? ☐ YES ☑ NO

2. Does party/amicus have any parent corporations? ☐ YES ☑ NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity? ☐ YES ☑ NO
   If yes, identify all such owners:

12/01/2019 SCC           - 1 -

4. Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation? ☐YES ☑NO
If yes, identify entity and nature of interest:

5. Is party a trade association? (amici curiae do not complete this question) ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6. Does this case arise out of a bankruptcy proceeding? ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7. Is this a criminal case in which there was an organizational victim? ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Leslie V. Maffeo         Date: 5/15/2024

Counsel for: Appellee

- 2 -

Print to PDF for Filing

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................... ii

INTRODUCTION .....................................................................................................1

STATEMENT OF ISSUES .......................................................................................1

ARGUMENT .............................................................................................................1

    I.    THE DECISION IN *BARNETT* SHOULD NOT CHANGE
         THE COURT'S ANALYSIS IN THIS CASE ......................................1

    II.   THIS COURT SHOULD NOT REMAND THIS CASE TO
         THE DISTRICT COURT ......................................................................4

CONCLUSION ..........................................................................................................9

i

## TABLE OF AUTHORITIES

Page(s)

**Cases:**

*Barnett v. Inova Health Care Services*,
   125 F.4th 465 (4th Cir. 2025) ................................................................... passim

*Chinnery v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*,
   No. 24-1697, 2025 WL 1733959 (4th Cir. June 23, 2025) .......................... passim

*Patrick v. LeFevre*,
   745 F.2d 153 (2d Cir. 1984) .............................................................................2, 8

*United States v. Seeger*,
   380 U.S. 163, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965) .....................................2, 8

*Winans v. Cox Auto., Inc.*,
   669 F. Supp. 3d 394 (E.D. Pa. 2023) ...................................................................6

# INTRODUCTION

Appellee The Humane Society of the United States[1] respectfully submits the following supplemental brief in accordance with this Court's August 11, 2025, Order.

# STATEMENT OF ISSUES

Per the Court's August 11 Order, the issues on which supplemental briefing have been requested are:

1. How, if at all, does *Barnett v. Inova Health Care Services*, 125 F.4th 465 (4th Cir. 2025) (hereinafter, "*Barnett*") alter this court's analysis of whether Appellants have adequately alleged the religiosity element of their Title VII religious discrimination claim?

2. Should this court remand to allow the district court to apply *Barnett* in the first instance? *See Chinnery v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. 24-1697, 2025 WL 1733959, at *2 (4th Cir. June 23, 2025) (hereinafter, "*Chinnery*").

# ARGUMENT

## I. THE DECISION IN *BARNETT* SHOULD NOT CHANGE THE COURT'S ANALYSIS IN THIS CASE.

The district court properly dismissed both Finn's and Muldoon's religious discrimination claims, holding that "neither Finn nor Muldoon have adequately pled that their beliefs are 'religious' in nature. JA50. The decision in *Barnett* should not alter this Court's analysis in the instant case as it does not represent new or changed

---

[1] Appellee changed its name to Humane World for Animals during the pendency of this appeal.

law in the Circuit. Rather it is simply an application of the existing law to the facts and allegations of that particular case. Indeed, in *Chinnery*, the Court stated that it had in *Barnett* merely "clarified that for a failure to accommodate claim to survive a motion to dismiss, a plaintiff must adequately allege that "her professed [religious] belief is (1) sincerely held and (2) religious in nature." *Chinnery*, 2025 WL 1733959, at \*2 (citing *Barnett*, 125 F.4th at 470).

In *Barnett*, the Court cites is from a 1965 U.S. Supreme Court case, *United States v. Seeger*, 380 U.S. 163, 185, 85 S. Ct. 850, 13 L. Ed. 2d 733 (1965), when it explains how an individual "qualif[ies] for Title VII protection."*Barnett*, 125 F.4th at 470 (citing *United States v. Seeger*, 380 U.S. 163, 185 (1965). In *Seeger*, the Supreme Court held that a plaintiff can demonstrate that she qualifies for Title VII protection by showing that "her professed belief is (1) sincerely held and (2) religious in nature." *Seeger*, 380 U.S. at 163. This Court's reliance on *Seeger* confirms its holding in *Barnett* is not new law.

In addition, this Court also cites in *Barnett* to a 1984 case from the Second Circuit, *Patrick v. LeFevre*, 745 F.2d 153, 157 (2d Cir. 1984), which in turn, cited *Seeger*. In *Patrick*, as this Court quoted, the Second Circuit held that the "second prong, religious in nature, 'limit[s] the factfinder's inquiry to a determination whether 'the beliefs professed ... are, in the claimant's own scheme of things, religious[.]'" *Id.* (citing *Patrick* and *Seeger*).

2

In *Barnett*, the Court set forth each of Barnett's allegations in order to analyze whether she had adequately alleged that her beliefs were religious in nature. The Court found the following allegations sufficient to establish the religious nature of her beliefs:

> (1) "it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it";
>
> (2) her "religious reasons for declining the covid vaccinations ... were based on her 'study and understanding of the Bible and personally directed by the true and living God' "; and
>
> (3) receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself.

*Barnett*, 125 F.4th at 471 (joint appendix cites omitted). Appellee is not seeking an application of different law or outdated law. Rather, it is seeking application of the same law—as clarified in *Barnett*—to a different set of allegations. The holding in *Barnett* does not change the analysis of the claims presented here. The same analysis that was done in *Barnett* can be done here with this Court reaching a different result. Indeed, the fact that this Court has overturned *Barnett*, holding that Barnett *did* adequately plead that her beliefs are religious in nature is not inconsistent with a different decision here.

3

## II. THIS COURT SHOULD NOT REMAND THIS CASE TO THE DISTRICT COURT.

It is not necessary to remand this case to the district court so that it might "apply *Barnett* in the first instance" as it did in *Chinnery*. The allegations in the instant case are highly distinguishable from the in both *Barnett* and *Chinnery*.

As this Court noted in its June 23, 2035, decision to remand, "Chinnery alleged, in part, that she 'is a faithful Christian,' that she informed Defendant "that 'anything that is unholy, unpure [sic], violates my body, faith and devotion to God,' and that her 'Christianity and devoted belief in the most High God is to continue to abstain from anything unpure [sic]' because her 'blood is sacred and life is found in the blood'" *Chinnery v. Kaiser Found. Health Plan of the Mid-Atl. States, Inc.*, No. 24-1697, 2025 WL 1733959, at *2 (4th Cir. June 23, 2025) (internal joint appendix cites omitted; footnote omitted). Chinnery also referenced her "sincerely-held Christian beliefs" not allowing her "to place any foreign substances or be assaulted by a foreign body being inserted into my nasal passages" with respect to her request to avoid regular Covid tests in lieu of being vaccinated. *Id*. (joint appendix cites omitted). Finally, Chinnery stated that her "body is the temple of the Holy Spirit and is to remain pure." *Id.* (joint appendix cites omitted). *Chinnery*, like *Barnett*, involved a plaintiff-appellant who clearly set forth the religiosity element of her failure to provide a reasonable accommodation claim.

4

The differences, however, between *Barnett* and the instant case are obvious and unambiguous. Not only does the holding in *Barnett* not dictate remand, as in Chinnery, but it also does not dictate a reversal as in *Barnett*. Barnett clearly set forth her *religious* objection to the vaccine. She stated that she was a devout Christian, that she was baptized in 2011, and that she made "all life decisions after thoughtful prayer and Biblical guidance." *Barnett*, 125 F.4th at 470. This alone significantly distinguishes the claim in *Barnett* from Finn's and Muldoon's claims, in which they skirt around the issue of religion, with Finn citing "Catholic teachings aligning with her faith," JA09-JA10, and Muldoon referencing her "Christian upbringing." JA12.

Barnett also alleged that "it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it;" and that her "religious reasons for declining the covid vaccinations . . . were based on her 'study and understanding of the Bible and personally directed by the true and living God;'" and "receiving the vaccine would be sinning against her body, which is a temple of God, and against God himself." *Barnett*, 125 F.4th at 471.

In stark contrast, Finn and Muldoon say absolutely nothing about any current religion or religious beliefs, hence the district court's dismissal. Muldoon "cited the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals as going against her spiritual and religious beliefs." JA12. Yet

5

she does not describe those religious beliefs. In her request for accommodation, she wrote that being vaccinated, as required by the policy, "would compromise the religious beliefs *founded in my Christian upbringing* that fetuses are individuals and did not consent to the use of their bodies in medical testing or production. As such, taking this vaccine would make me complicit in an act that offends my spiritual and religious faith." *Id*. (emphasis added).

In dismissing her claims, the district court found that "Muldoon does not allege that she subscribes to a particular religion nor does she state what her religious beliefs are." JA52. "Muldoon references her Christian upbringing," the district court noted, but she "does not allege what religious beliefs she holds *now*." JA52 (emphasis added). While acknowledging Muldoon's allegation in the Complaint regarding "the use of aborted fetal cell lines in the creation of the vaccine and the testing of the vaccine on animals," the district court was not persuaded by her statement that this goes against her unnamed "spiritual and religious beliefs," and found it inadequate to establish that Muldoon's objection to receiving the COVID-19 vaccine was religious in nature because she did not explain how the use of fetal cell lines in the creation of the vaccine was "tied to any religious belief." JA53 (citing *Winans v. Cox Auto., Inc*., 669 F. Supp. 3d 394, 401 (E.D. Pa. 2023) (holding that plaintiff's objection to the use of fetal cell lines in the development of the COVID-19 vaccine does not amount to a religious belief)).

6

Similarly, Finn's allegations regarding the religious nature of her objections to the COVID-19 vaccine pale in comparison to Barnett's. In the Complaint, Finn alleges that she submitted a request for a religious accommodation in which she "cited Catholic teachings aligning with her faith that would be betrayed by getting vaccinated against COVID-19." JA09. She wrote on her request that her "conscience and heart are guided by [her] faith in God the Father and his son Jesus Christ" and that "[t]he HSUS policy would unjustly force [her] to act in betrayal to [her] conscience and faith." JA09-10.

Finn does not allege the specific nature of any religious belief she holds that conflicted with the HSUS's vaccination requirement. JA09-10, JA15-19. Finn merely alleges that she "cited Catholic teachings aligning with her faith that would be betrayed by getting vaccinated against COVID-19," without alleging that she actually ascribes to the "Catholic teachings" cited in her request—nor any other religious beliefs, for that matter. JA09-10. Finn alleges only that such teachings "align[]" with her personal beliefs, which she does not describe other than to say that her "conscience and heart are guided by [her] faith in God the Father and his son Jesus Christ" and that the "HSUS policy would unjustly force [her] to act in betrayal to [her] conscience and faith." *Id.*, JA37. Finn's objection to receiving the COVID-19 vaccine was simply a personal preference couched in religious terms.

7

The district court aptly noted that Finn did not "identify if she subscribes to any particular religion or the specific nature of any religious beliefs" and while she "states that Catholic teachings 'align with her faith,' she does not state that she identifies as Catholic nor does she provide any specifics regarding what beliefs make up her 'faith.'" JA50.  Further, the district court found that Finn's "entire religious exemption request is essentially a statement that her religion requires that she listen to her conscience and act according to personal preference." JA52.  This is vastly different from Barnett's allegation that "it would be sinful for her to engage with a product such as the vaccination after having been instructed by God to abstain from it." *Barnett*, 125 F.4th at 471.

As this Court stated in *Barnett*, the question of religiosity "limit[s] the factfinder's inquiry to a determination whether 'the beliefs professed ... are, in the claimant's own scheme of things, religious[.]'" *Id*. at 470 (citing *Patrick*, 745 F.2d at 157-58; *Seeger*, 380 U.S. at 185).  This is admittedly not a heavy burden for the Appellants.  But Appellants would like us to believe there is no religiosity prong.  They suggest they need only state, "I have a religious objection to the vaccine" and the only remaining question is of sincerity.  But the law is as it is because there does need to be some determination that the objections are, in fact, *religious*.

For starters, Barnett and Chinnery both clearly stated that they are Christian, which distinguishes the two of them from Finn and Muldoon from the start.  That is

8

not to say that a successful Title VII plaintiff needs to adhere to a particular mainstream religion or any named religion at all. But a plaintiff must be able to set forth her religious beliefs, even if they are believed by her alone. Neither Finn nor Muldoon articulated any particular belief, choosing instead to just reference unspecified "Catholic teachings" or a "Christian upbringing."

Appellants have not adequately alleged that the beliefs underpinning their objections to the COVID-19 vaccine are religious in nature. As such, the district court's holding that neither Finn or Muldoon have adequately pled the *religiosity* of their requests for accommodation is not in any way inconsistent with this Court's holding in *Barnett*. Thus, this Court need not remand as was done in *Chinnery*.

## **CONCLUSION**

For the foregoing reasons and those in Appellee's opening brief, the decision of the district court should be affirmed.

DATED: August 22, 2025        Respectfully submitted,

By: /s/ Karla Grossenbacher
Karla Grossenbacher
kgrossenbacher@seyfarth.com
Leslie V. Maffeo
lmaffeo@seyfarth.com
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, DC 20004
Phone: (202) 463-2400
Fax: (202) 828-5393

*Counsel for Appellee*

# **CERTIFICATE OF COMPLIANCE**

1. This brief complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

    [ X ] this brief contains [*2,107*] words.

    [   ] this brief uses a monospaced type and contains [*state the number of*] lines of text.

2. This brief complies with the typeface and type style requirements because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 365*] in [*14pt Times New Roman*]; *or*

    [   ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: August 22, 2025            /s/ Karla Grossenbacher
                                                   *Counsel for Appellee*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 22nd day of August, 2025, I caused this Supplemental Brief of Appellee to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Francis J. Collins
Samantha M. Safchinsky
KSC LAW
201 North Charles Street, 10th Floor
Baltimore, Maryland  21201
(410) 244-1010

*Counsel for Appellant*

/s/ Karla Grossenbacher
*Counsel for Appellee*